UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ALBERT C., an Individual, | Case No.: 8:18-02164 ADS |
|---|---|
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

I. **INTRODUCTION**

Plaintiff Albert C.[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his applications for a period of disability and disability insurance benefits ("DIB"),

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

and supplemental security income ("SSI"). Plaintiff contends that the Administrative Law Judge ("ALJ") improperly considered his mental impairments, improperly discounted the opinion of a nurse practitioner, and makes other challenges to the administrative process. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

## II.     <u>FACTS RELEVANT TO THE APPEAL</u>

A review of the entire record reflects certain uncontested facts relevant to this appeal. Prior to filing his applications for social security benefits, Plaintiff worked as a driver, roofer, and "lead man" for construction companies from 2002 to 2009. (Administrative Record "AR" 40, 42, 57, 220, 235-36, 281). From 2013 to 2015, he worked as a prep cook for a restaurant. (AR 40-41, 220, 235, 237). Plaintiff also did maintenance, repair, and landscaping for a hotel in 2015. (AR 225, 238, 281). He stopped working on March 20, 2015, the alleged onset date. (AR 178, 182, 219, 254). He alleges he can no longer perform any work based on his anxiety, depression, hyperactivity, sleep deprivation, hives, back locking up, foot swelling, and burning in his knee. (AR 219, 226, 244-45, 248, 257, 260). Regarding his knee and back, he explained that he was shot in the California Department of Corrections and thrown down a flight of stairs by a corrections officer. (AR 232). Consequently, he wears a knee brace, uses a "walking stick," and fears the police. (AR 232, 265).

From March 2015 through July 2017, Plaintiff saw nurse practitioner Mumbi Ngunjiri for complaints of anxiety attacks, insomnia, violent thoughts, and paranoid thoughts. During his appointments, he explained to her the effects of his history of incarceration and being harassed by police due to his tattoos. (AR 24, 315-17, 320, 333-46, 386-401, 404-14.) On March 4, 2016, Ms. Ngunjiri completed a "MENTAL

IMPAIRMENT QUESTIONNAIRE (Listings)."  (AR 26, 381-84).  She stated that Plaintiff's "DSM-IV Multiaxial Evaluation" was "PTSD."  (AR 381).  She said he was treated with psychotropic medication with "minimal – moderate response," but left the prognosis section of the questionnaire blank.  (Id.).  She opined that Plaintiff had "None-Mild" restriction of activities of daily living.  (AR 383).  She further opined that he had "Moderate" difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.  (Id.).  She estimated that he had four or more episodes of decompensation within a 12-month period.  (Id.)  She further estimated that Plaintiff would miss about four days a month due to his impairments or treatment.  (AR 384).  Finally, she concluded that Plaintiff had the ability to manage benefits in his own best interest.  (Id.).

At the administrative hearing, Plaintiff testified about his impairments, including shoulder pain, left ankle/foot injury from his 1998 gunshot wound, anxiety, and PTSD. He reported that he used pain and psychotropic medications, and that the latter were "helpful" and "relieves" him.  (AR 49).  He said he cannot lift, is easily distracted, and feels anxious around police and groups of people.  He testified about living with his two sons, driving them to school, and feeding them.  (AR 24, 40-56).

### III. PROCEEDINGS BELOW

#### A. Procedural History

Plaintiff protectively filed applications for DIB under Title II and SSI under Title XVI on April 3, 2015, alleging disability beginning March 20, 2015.  (AR 18, 178-87, 215).  Plaintiff's applications were denied initially on September 21, 2015 (AR 85-86), and upon reconsideration on January 14, 2016 (AR 105-06).  A hearing was held before ALJ Alan J. Markiewicz on November 7, 2017.  (AR 35-62).  Plaintiff, represented by

counsel, appeared and testified at the hearing (AR 40-56), as did vocational expert Kelly Winn (AR 56-60).

On February 27, 2018, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act ("SSA").[3] (AR 18-29). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on October 26, 2018. (AR 1-6). Plaintiff, now representing himself, filed this action in District Court on December 6, 2018, challenging the ALJ's decision. [Docket ("Dkt.") No. 1].

On May 30, 2019, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. [Dkt. Nos. 18, 18]. After issuing two orders to show cause why the case should not be dismissed for failure to prosecute and obey Court orders [Dkt. Nos. 21, 25], the parties filed a Joint Stipulation on January 6, 2020 [Dkt. No. 29]. The case is ready for decision.[4]

### B. Summary of ALJ Decision After Hearing

In the decision, the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the SSA.[5] 20 C.F.R.

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

[4] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 13, 14].

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

1  §§ 404.1520(a)(4), 416.920(a)(4).  At **step one**, the ALJ found that Plaintiff had not

2  engaged in substantial gainful activity since his alleged onset date.  (AR 21).  At **step**

3  **two**, the ALJ found that Plaintiff had the following severe impairments:

4  (a) degenerative joint disease of the right shoulder; (b) post-traumatic stress disorder

5  ("PTSD"); (c) depression; and (d) history of polysubstance disorder.  (Id.)  At **step**

6  **three**, the ALJ found that Plaintiff "does not have an impairment or combination of

7  impairments that meets or medically equals the severity of one of the listed impairments

8  in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,

9  416.920(d), 416.925[,] and 416.926)."  (AR 21-23).

   The ALJ then found that Plaintiff had the residual functional capacity ("RFC")[6] to

perform light work defined in 20 C.F.R. §§ 404.1567(b), 416.967(b)[7], further restricted

as follows:

> can lift and/or carry 20 pounds occasionally and 10 pounds
> frequently; can stand and/or walk for 6 hours out of an 8-hour

---

Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. § 404.1520).

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[7] "Light work" is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying
> of objects weighing up to 10 pounds.  Even though the weight lifted may be
> very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing
> and pulling of arm or leg controls.  To be considered capable of performing
> a full or wide range of light work, you must have the ability to do
> substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

| | |
|---|---|
| 1 | workday with regular breaks; can sit for 6 hours out of an 8-hour |
| 2 | workday with regular breaks; can occasionally reach overhead with the right upper extremity; is limited to simple repetitive tasks; and is |
| 3 | limited to work involving no more than occasional contact with coworkers and the public. |
| 4 | (AR 23; <u>see also</u> AR 27). |

At **step four**, based on Plaintiff's RFC, vocational background, and the vocational expert's testimony, the ALJ found that Plaintiff is unable to perform his past relevant work as a kitchen helper (Dictionary of Occupational Titles ("DOT") 318.687-010) or construction worker (DOT 869.664-014). (AR 24-25).

At **step five**, the ALJ found that, considering Plaintiff's age as a "younger individual," along with his education, work experience, and RFC, he could perform other jobs that exist in significant numbers in the national economy. (AR 27-28). The ALJ accepted the vocational expert's testimony that Plaintiff would be able to perform the representative occupations of: small products assembler (DOT 706.684-022) and hand packager (DOT 559-687-074). (AR 28). As such, the ALJ found that Plaintiff was "not under a disability," as defined in the SSA, from March 20, 2015, through the date of the decision, February 27, 2018. (AR 29).

## IV. <u>ANALYSIS</u>

### A. <u>Issues on Appeal</u>

Plaintiff does not identify the disputed issues as required by the Court's case management order. [<u>See</u> Dkt. No. 6 at 6-7]. Instead, his portion of the Joint Stipulation generally challenges the following, whether the ALJ: (1) considered his PTSD; (2) considered the opinion of nurse practitioner Ngunjiri; (3) considered that he was on medication for his shoulder surgery during the hearing; and (4) improperly found he could lift 50 to 60 pounds. [Dkt. No. 29 (Joint Stipulation), pp. 1-4, 14-16].

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ

on a ground upon which [s]he did not rely." <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

### C. **The ALJ Properly Considered Plaintiff's Mental Impairments**

Plaintiff contends that the ALJ "over[]looked" and failed to consider his PTSD, individually and in combination with his other impairments. [Dkt. No. 29, p. 2-3, 15]. Plaintiff also points out that he takes medication for PTSD, depression, and anxiety and has been diagnosed with these disorders. [<u>Id.</u>].

    1. <u>Legal Standard for Consideration of Impairments In the Disability Evaluation</u>

At step two of the sequential evaluation, the ALJ determines whether the claimant has a severe, medically determinable impairment or combination of impairments that meets the durational requirement. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In assessing severity, the ALJ must determine whether the claimant's medically determinable impairment or combinations of impairments significantly limits his ability to do basic work activities. <u>See</u> <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005). Step two is a "de minimis screening device to dispose of groundless claims." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." <u>Webb</u>, 433 F.3d at 686 (quoting <u>Smolen</u>, 80 F.3d at 1290). The ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when [that] conclusion is 'clearly established by medical evidence.'" <u>Id.</u> at 687 (citation omitted). Harmless error analysis applies to the step two

determination. Davenport v. Colvin, 608 F. App'x 480, 481 (9th Cir. 2015); Burch, 400 F.3d at 682.

At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal a listed impairment. Before turning to step four, the ALJ fashions the claimant's RFC. A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. Id.

An ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly, an ALJ is also not obligated to discuss every word of an opinion or include limitations not actually assessed by the medical professional. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012.

### 2. The ALJ Properly Considered Plaintiff's Mental Impairments.

At step two, the ALJ found that, in addition to a severe physical impairment, Plaintiff has the severe mental impairments of PTSD and depression. (AR 21). The ALJ also specifically stated at this step that he "considered the functional limitations resulting from all of [Plaintiff]'s medically determinable impairments" in his fashioning of the RFC later in the decision. (Id. (emphasis added)).

Next, the ALJ proceeded to his consideration of Plaintiff's mental impairments, "singly and in combination," under the four functional areas known as the "paragraph

B" criteria. (AR 21-23). The ALJ found, as to each criterion, there was insufficient evidence to establish that Plaintiff was "seriously limited." (AR 21-22). The ALJ found Plaintiff was moderately limited in understanding, remembering, or applying information. (AR 22). Regarding his ability to interact with others, the ALJ found Plaintiff had "no/mild/moderate" limitation. (Id.). The ALJ pointed out that Plaintiff reported he had "good relationships with family and friends," but also noted that he felt paranoid in groups of people. (Id.). The ALJ then gave Plaintiff "the benefit of the doubt" and found that he had moderate limitation in the area of concentrating, persisting, or maintaining pace. (Id.). The ALJ addressed Plaintiff's mental status examination, noting, in addition to other findings, Plaintiff's normal functioning in concentration and attention, and Plaintiff's statements that he was able to perform normal concentration functioning in his daily activities. (Id.). Finally, the ALJ found Plaintiff had only a mild limitation in the area of adapting or managing oneself. (Id.). The ALJ again referenced consultative-examiner findings, including Plaintiff's cooperativeness and appropriate dress and grooming. (Id.). The ALJ concluded that because Plaintiff's mental impairments did not cause at least two "marked" limitations, or one "extreme" limitation, the "paragraph B" criteria were not satisfied. (Id.).

The ALJ then explained that: "[t]he limitations identified in the 'paragraph B' criteria are not a[n RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 . . . requires a more detailed assessment." (AR 23). The ALJ concluded by stating that "the following [RFC] reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" and then assessed Plaintiff's RFC. (Id.).

As mentioned above, in addition to limiting Plaintiff in the RFC physically to a restricted range of light work, the ALJ found Plaintiff was limited to "simple repetitive tasks" and to work "involving no more than occasional contact with coworkers and the public." (AR 23). The ALJ repeated that he considered "all symptoms" in fashioning the RFC. (Id.). In doing so, the ALJ considered Plaintiff's subjective statements and testimony about his PTSD, anxiety, treatment, psychotropic medications, distraction, and anxiousness around police officers and groups of people.[8] (AR 24-25, 47-52). The ALJ discussed Plaintiff's mental health records, including with nurse practitioner Ngunjiri, again addressed the psychiatric consultative examination and evaluation, and addressed the State agency psychologists' opinions. (AR 24-26).

Plaintiff has failed to show how this exhaustive consideration of his mental health issues was in error. As mentioned, the ALJ found Plaintiff's PTSD and depression to be severe impairments. (AR 21). To the extent Plaintiff contends that the ALJ erred by failing to also find his anxiety severe, any error, if there was any, was harmless because step two was resolved in Plaintiff's favor, i.e., the ALJ found Plaintiff's claim survived the "gatekeeping" step designed to dispose of groundless claims by finding another impairment to be severe. See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step-two finding is "merely a threshold determination" that "only raises a prima facie case of a disability"); Burch, 400 F.3d at 682 (concluding that any error ALJ committed at step two was harmless where the step was resolved in claimant's favor); Kemp v. Berryhill, 2017 WL 3981195, at *5 (C.D. Cal. Sept. 8, 2017) (any error in declining to find

---

[8] The ALJ gave Plaintiff's subjective complaints the "benefit of the doubt" at times, but ultimately found them not entirely credible, a determination Plaintiff does not challenge in this appeal. (AR 24-27).

impairments severe is harmless because step two is the "gatekeeping" step, and the ALJ continued the analysis).

Moreover, the ALJ considered <u>all</u> of Plaintiff's mental health issues in assessing his RFC, including his PTSD, depression, and anxiety. As mentioned, the ALJ considered Plaintiff's mental health condition in a highly detailed analysis immediately before fashioning the RFC, acknowledged that the "paragraph B" criteria and RFC are separate findings, and specifically found that the RFC reflected the degree of limitation he had already found in the "paragraph B" mental function analysis. (AR 20). The ALJ stated on at least two occasions that he considered "all" of Plaintiff's symptoms and impairments in assessing the RFC. (AR 22-23). The ALJ also stated he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.926" and proceeded to discuss those opinions in the decision. (AR 23). Accordingly, Plaintiff has not shown that the ALJ omitted consideration of his mental impairments in assessing the RFC.

To the extent Plaintiff also contends that the ALJ should have included even more restrictive limitations in the RFC based on his mental limitations, Plaintiff has failed demonstrate he is entitled to relief. He has not explained how any of his mental limitations are sufficiently restrictive to ultimately preclude him from performing work. <u>See, e.g.</u>, <u>Hoopai</u>, 499 F.3d at 1077 (explaining the Ninth Circuit has not "held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation."); <u>Ball v. Colvin</u>, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) ("As the ALJ found that Plaintiff's mental impairments were minimal, the ALJ was not required to include them in Plaintiff's RFC."); <u>Sisco v. Colvin</u>, 2014 WL 2859187, at *7-8 (N.D. Cal. June 20,

2014) (ALJ not required to include in RFC assessment mental impairment that imposed "no significant functional limitations").

Accordingly, for the reasons outlined above, the Court finds no harmful error at step two or in fashioning the RFC, and concludes that the ALJ duly considered Plaintiff's mental impairments in the decision.

### D. <u>The ALJ Properly Considered the Nurse Practitioner's Opinion</u>

Next, Plaintiff objects to the ALJ's rejection of Ms. Ngunjiri's opinion[9]. [Dkt. No. 29, p. 3].

#### 1. <u>Legal Standard for Consideration of "Other Source" Opinions</u>

"[A]n [ALJ] may disregard a medical opinion that is brief, conclusory, and inadequately supported by clinical findings." <u>Britton v. Colvin</u>, 787 F.3d 1011, 1012 (9th Cir. 2015) (per curiam); <u>see also</u> <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1140 (9th Cir. 2014). However, "only licensed physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting 20 C.F.R. § 404.1513(a)). Nurse practitioners and physician assistants are not considered acceptable medical sources and are instead defined as "other sources" that are not entitled to the same deference as acceptable medical sources. <u>See</u> <u>Dale v. Colvin</u>, 823 F.3d 941, 943 (9th Cir. 2016); <u>Britton</u>, 787 F.3d at 1013; <u>Molina</u>, 674 F.3d at 1104. "An ALJ may discount the opinion of an 'other source,' such as a nurse practitioner, if she provides 'reasons germane to each witness for doing so.'" <u>Popa v. Berryhill</u>, 872 F.3d 901, 906 (9th Cir. 2017) (citation omitted).

---

[9] Plaintiff initially refers to Ms. Ngunjiri as a "doctor," but then later concedes she is a nurse practitioner. [Dkt. No. 29, pp. 1, 3].

-13-

## 2. The ALJ Provided Germane Reasons, Supported by Substantial Evidence, for Discounting the Opinion

Preliminarily, the Court notes the ALJ did not reject Ms. Ngunjiri's opinion in its entirety. By providing a summary of her treatment notes and opinion, and then assigning "low" weight, the ALJ necessarily gave consideration and credited aspects of the opinion. (AR 24, 26). Indeed, the ALJ made similar findings as assessed by Ms. Ngunjiri in the areas of Plaintiff's social functioning, and concentration, persistence, and maintenance of pace. (Compare AR 22 with AR 383). Further, as mentioned, the ALJ limited Plaintiff to simple repetitive tasks and limited his contact with coworkers and the public, which at least partially reflected Ms. Ngunjiri's opinion. (AR 23).

To the extent the ALJ did not fully adopt the limitations in the opinion, he provided germane reasons for doing so that are supported by the record. The ALJ assigned "low" weight to the opinion because:

> The mental limitations [Ms. Ngunjiri] assessed are excessive compared to her clinical notes of record, showing overall normal mental status examination findings with improving mood and affect ([Citing 315-17, 320, 388, 410, 412]). In addition, the medical records do not show that [Plaintiff] had multiple episode[s] of decompensation or marginal adjustment. Also, Ms. Ngunjiri did not provide any significant rationale to indicate why [Plaintiff] should have a large number of absences from work. Lastly, little weight is given to her opinion because she is a nurse practitioner and is not an acceptable medical source as defined in the Regulations (20 CFR 404.1513(a)(e)).

(AR 26; see also AR 24).

Plaintiff has not attempted to show that any of these reasons are illegitimate or otherwise inadequate. The record supports the ALJ's conclusion that many of Ms. Ngunjiri's treatment notes reflected normal mental status findings with improving mood and affect. (See, e.g., AR 315 (finding Plaintiff cooperative, intact speech, goal-

directed thought process, intact thought content, no suicidal or homicidal ideations), 316 (describing "good effects" of taking Klonopin every other day), 317 (Plaintiff reports "moderate improvement" with medications, denies side-effects), 386 (same; improvement of mood/affect); 387 (same); 388 (reports "moderate improvement"'; improvement of mood/affect); 393 (reports "moderate improvement"; "still having anxiety . . . without medication, with medication better"; improvement of mood/affect; "[n]o significant change in diagnostic results"); 395 ("reports moderate improvement as a result of medications"); 398 (same); 410-12 (same). Accordingly, the ALJ properly relied on this factor. See Wilhelm v. Comm'r Soc. Sec. Admin., 597 F. App'x 425, 425 (9th Cir. 2015) (ALJ properly rejected opinion because it contradicted treatment notes); Shavin v. Comm'r Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject opinion by "noting legitimate inconsistencies and ambiguities in the analysis or conflicting lab test results, reports, or testimony" (internal citation omitted)).

Moreover, as mentioned, the opinion was incomplete in several areas, there is no indication how Ms. Ngunjiri calculated the episodes of decompensation, and she did not explain how she reached the conclusion that Plaintiff would have many absences from work. (AR 281-84). The ALJ properly considered these deficiencies of the opinion. See, e.g., Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted) (ALJ need not accept opinion "that opinion is brief, conclusory, and inadequately supported by clinical findings."); Molina, 674 F.3d at 1111-12 (ALJ had "germane reasons for discounting [physician's assistant's] opinions . . . [which] consisted primarily of a standardized, check-the-box form . . . [that] . . . failed to provide supporting reasoning or clinical findings . . . .").

Finally, the ALJ was entitled to consider the source of the opinion, and because he provided germane reasons for discounting it, he was entitled to give it less weight. See Rusten v. Comm'r of Social Sec. Admin., 468 F. App'x 717, 720 (9th Cir. 2012) ("A nurse practitioner is an 'other source' for the purposes of medical testimony, and as such, his opinion cannot be used to establish a medical impairment. An ALJ can give less weight to an 'other source' medical opinion by providing reasons germane to each witness for doing so.") (internal citations and quotations omitted); Popa, 872 F.3d at 906. Accordingly, Plaintiff has not shown the ALJ improperly discounted the nurse practitioner's opinion.

### E. **Remaining Contentions**

Plaintiff is not entitled to relief on his remaining contentions. Regarding Plaintiff's allegation that he was on medication for shoulder surgery during the hearing, there is nothing in the transcript indicating he was unable to participate effectively and testify competently. (AR 40-56). Moreover, Plaintiff was represented by counsel at the time, who presented argument on his behalf, elicited testimony from him regarding his conditions, and posed a hypothetical question to the vocational expert. (AR 37-40, 52-56, 60-61). To the extent Plaintiff suggests that the ALJ failed to consider his shoulder condition, the ALJ heard testimony about his impairment and noted Plaintiff was wearing a sling (AR 39, 43-46), found degenerative joint disease of the right shoulder to be a severe impairment (AR 21), and, as mentioned, limited Plaintiff to a restricted range of light work with only occasional overhead reaching with the right upper extremity (AR 23). Plaintiff has failed to explain how this inadequately addressed his condition. Finally, contrary to Plaintiff's assertion [Dkt. No. 29, p. 2], the ALJ did not

find he could lift 50 to 60 pounds.[10]  (Id.).  Accordingly, Plaintiff has failed to show any harmful error in the ALJ's decision.

## V. CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice.  Judgment shall be entered accordingly.

DATE: March 25, 2020

                                              /s/ Autumn D. Spaeth
                                  THE HONORABLE AUTUMN D. SPAETH
                                  United States Magistrate Judge

---

[10] The Court declines to address Plaintiff's additional, cursory claims raised for the first time in the reply. See, e.g., Figueroa v. Berryhill, 2018 WL 2176386, at *4 n.3 (C.D. Cal. May 10, 2018) (declining to address arguments raised for first time in reply portion of joint stipulation); Shaw v. Colvin, 2016 WL 1715058, at *2 n.4 (C.D. Cal. Apr. 26, 2016) (same). Ulloa v. Colvin, 2015 WL 9455557, at *6 n.9 (C.D. Cal. Dec. 23, 2015) (same).

-17-